**23 Mag. 6886**    AUSA: Meredith C. Foster

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **COMPLAINT** |
| v. | Violations of 18 U.S.C. §§ 922(g), 641, 2 |
| ADRON DOUGLAS, | COUNTY OF OFFENSE: |
| Defendant. | BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

THOMAS NUZIO, being duly sworn, deposes and says that he is a Task Force Officer

with the Bureau of Alcohol, Tobacco, Firearms and Explosives, ("ATF"), and charges as follows:

## COUNT ONE
### (Theft of Government Property)

1.      On or about October 11, 2023, in the Southern District of New York and elsewhere,

ADRON DOUGLAS, the defendant, knowingly embezzled, stole, purloined, and converted to his

use a record, voucher, money, and thing of value of the United States and a department and agency

thereof, to wit, ATF, which exceeded the sum of $1,000, and received, concealed, and retained the

same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen,

purloined, and converted, to wit, DOUGLAS stole, among other things, ammunition, handcuffs, a

Pelican case, a taser, and taser cartridges from an ATF agent and an ATF task force officer.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT TWO
### (Possession of Ammunition After a Felony Conviction)

2.      On or about October 19, 2023, in the Southern District of New York and elsewhere,

ADRON DOUGLAS, the defendant, knowing he had previously been convicted in a court of a

crime punishable by imprisonment for a term exceeding one year, knowingly possessed

ammunition, to wit, fifty-seven rounds of Federal .223 caliber ammunition, eighty rounds of

Hornaday 9mm ammunition, twelve rounds of Speer .40 caliber ammunition, ten rounds of Winchester .223 caliber ammunition, fifteen rounds of Winchester 9mm ammunition, and fifty rounds of 9mm Federal ammunition, and the ammunition was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.       I am a Task Force Officer with ATF.  This affidavit is based upon my personal involvement in this investigation, my conversations with law enforcement personnel, my review of surveillance camera footage, and my examination of official reports and records.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## THE THEFT OF GOVERNMENT PROPERTY

4.       Based on my personal involvement in this investigation, my conversations with law enforcement, and my review of surveillance footage, I have learned the following:

a.       On or about October 11, 2023 at approximately 3:05 p.m., an individual (the "Perpetrator") entered a parking lot located in the basement of a building located in Bronx, New York ("Building-1").  ATF has office spaces in Building-1 and the parking lot is used by ATF officers to park their vehicles.

b.       Based on my review of surveillance footage, I have learned that, while inside the parking lot, the Perpetrator stole items from at least two vehicles that are used by an ATF agent ("ATF Agent") and an ATF task force officer ("ATF Task Force Officer").  Items that were identified as taken from the vehicles include: a set of handcuffs, a flashlight, four Glock pistol magazines containing 60 rounds of 9mm Hornady ammunition marked with the ATF Agent's

2

initials, an orange Pelican case which contained an Aardvark taser and three taser cartridges, purple wireless headphones, a Leatherman multi-tool, a gun belt, a bulletproof vest with ATF markings, a black Guess vest, a pink sweater, and a pair of Jordan sneakers.

        c.    Certain of the stolen items were property of ATF—including the handcuffs, the ammunition, the Pelican case, the Aardvark taser, and the three taser cartridges.

        d.    At approximately 4:00 p.m., the Perpetrator left the parking lot.  The Perpetrator wore a white tank top and white shoes with dark marks on them.

        e.    Subsequently, law enforcement recovered the pink sweater, the gun belt, and the bulletproof vest with ATF markings which were stolen from the vehicles and which appeared to have been dropped by the Perpetrator, in or near the parking lot.

    5.    Based on my conversations with an agent with ATF who acts as the firearms instructor, the value of the ATF property that the Perpetrator stole exceeds the sum of $1,000.

**IDENTIFICATION OF THE PERPETRATOR AS ADRON DOUGLAS**

    6.    Based on my review of surveillance footage of a building located in the Bronx, New York ("Building-2"), I know that a person ("Individual-1") entered Building-2 on or about October 11, 2023 at approximately 4:50 p.m.—*i.e.*, approximately 50 minutes after the Perpetrator left the parking garage.  Shortly after, Individual-1 entered the elevator of Building-2.  Individual-1 appeared to press the button for floor five on the elevator and then exited the elevator once the elevator reached that floor.  Individual-1 was wearing a white tank top, a black vest, and wearing white sneakers with dark marks on them.  He also was carrying an orange box and what appeared to be black sneakers.  He also appeared to be hiding a bag of items underneath the vest.

    7.    Based on my review of publicly available information from Google Maps, I have learned that Building-2, is an approximately 30-minute walk from Building-1's parking lot.

8.      Based on my review of surveillance footage of Building-2 and Building-1's parking lot, Individual-1 appears to be the Perpetrator.  Not only does he have the same build and facial features as that of the Perpetrator, but he is wearing similar clothing to the Perpetrator as well as what appears to be the black Guess vest stolen from one of the vehicles and is carrying what appears to be the orange box as well as the Jordan sneakers stolen from the vehicles.

9.      Based on my review of records obtained from the New York Department of Motor Vehicles ("DMV"), I know that ADRON DOUGLAS's driver's license states that he lives in a unit in Building-2 ("Douglas's Residence").

10.     Based on my communications with a security officer who works at the complex in which Building-2 is located, I know that Douglas's Residence is on the fifth floor of Building-2.

11.     Based on my review of a DMV photograph of ADRON DOUGLAS, a photograph of ADRON DOUGLAS from law enforcement databases, and surveillance footage from Building-2, I believe that ADRON DOUGLAS, the defendant, is Individual-1.  They have the same build, hair line, and facial features as one another.  I therefore believe that DOUGLAS, the defendant, is the Perpetrator.

**SEARCH OF ADRON DOUGLAS'S RESIDENCE AND SUBSEQUENT ARREST**

12.     Based on my review of records, my personal involvement in this investigation, and my conversations with other law enforcement officials, I know the following:

a.      On or about October 19, 2023, the Honorable Judge James L. Cott, United States Magistrate Judge, signed a warrant authorizing a search of Douglas's Residence.

b.      Pursuant to that search warrant, law enforcement conducted a search of Douglas's Residence on or about October 19, 2023.

c.      During the search, law enforcement recovered and seized from Douglas's Residence various items including:

4

    i.   fifty-seven (57) rounds of Federal .223 caliber ammunition;

   ii.   eighty rounds (80) of Hornaday 9mm ammunition;

  iii.   twelve rounds (12) of Speer .40 caliber ammunition;

  iv.   ten rounds (10) of Winchester .223 caliber ammunition;

   v.   fifteen rounds (15) of Winchester 9mm ammunition;

  vi.   fifty rounds (50) of 9mm Federal ammunition;

 vii.   handcuffs with ATF Agent's badge number on it;

viii.   an orange Pelican case;

  ix.   a flashlight;

   x.   four (4) 9mm pistol magazines with the initials of ATF Agent on them;

  xi.   purple earbuds; and

 xii.   a plastic case for taser cartridges.

13.     The ATF Agent and ATF Task Force Officer have identified several of the items seized from Douglas's Residence as items stolen from their vehicles on or about October 11, 2023.

14.     On or about October 19, 2023, at approximately 9:50 p.m., ADRON DOUGLAS, the defendant, was arrested. At the time of his arrest, DOUGLAS had on his person an Aardvark taser, as well as a credit card in the name of ATF Task Force Officer.

**<u>MANUFACTURE OF AMMUNITION AND FELON STATUS</u>**

15.     Based on my discussions with a special agent from ATF who is familiar with the manufacturing of firearms and ammunition, and who reviewed the ammunition collected by ATF, I know that the ammunition recovered at Douglas's Residence was not manufactured in New York State.

16.     Based on my review of law enforcement and court databases, I know that on or about October 17, 2019, ADRON DOUGLAS was convicted of burglary in the third degree, a

Class D felony, in violation of New York Penal Law 140.20, in Nassau County Court and was sentenced to one to three years' imprisonment.

WHEREFORE, I respectfully request that ADRON DOUGLAS, the defendant, be imprisoned or bailed, as the case may be.

THOMAS NUZIO
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me this 20th day of October, 2023.

THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York